IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 10, 2007

## STATE OF TENNESSEE v. ANTONIO RAMON SMILES

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 7897    J. Weber McCraw, Judge**

─────────────

**No. W2006-02326-CCA-R3-CD  - Filed January 18, 2008**

─────────────

The appellant, Antonio Ramon Smiles, was convicted of introduction of contraband into a penal institution and possession of more than one-half ounce of marijuana with intent to deliver. He received a total effective sentence of three years of confinement in the Tennessee Department of Correction. On appeal, the appellant challenges the trial court's failure to dismiss the indictment for introduction of contraband into a penal institution and the sufficiency of the evidence supporting his convictions. Upon our review of the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID G. HAYES and THOMAS T. WOODALL, JJ., joined.

Kari I. Weber, Jackson, Tennessee, for the appellant, Antonio Ramon Smiles.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Tracey Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The State's proof at trial revealed that the appellant had been employed at the West Tennessee State Penitentiary in Henning for approximately three years, and, at the time of the offenses, the appellant was working in Unit 9 at Site 3 in the prison. All of the correctional officers in the prison were given extensive training on how to deal with threats from inmates. On March 25,

2005, just prior to 6:00 a.m., the appellant arrived at the prison to begin his shift. The appellant was wearing a "shank-proof" vest.[1]

After coming through the exterior doors into the prison, the appellant passed restrooms for men and women which were located on either side of the hall. These restrooms were cleaned several times a day. Beyond the restrooms was a checkpoint for entry into the prison. In accordance with mandated procedure, the appellant passed through the metal detectors at the checkpoint and proceeded to Central Control to obtain his equipment.

The correctional officers staffing Central Control were performing a "shakedown" of all staff entering the building for the morning shift at Site 3. A shakedown is a search for contraband on a person's body or in the person's clothing. Lieutenant Patricia Galloway was one of the officers performing the "shakedown." The appellant approached Lieutenant Galloway and informed her that he had left his "chits," small metal disks bearing his name, at the checkpoint. Because the appellant needed his chits to obtain his equipment, Lieutenant Galloway gave the appellant permission to return to the checkpoint to retrieve them; however, Lieutenant Galloway instructed the appellant to go no further than the checkpoint. Soon thereafter, the appellant returned. He unbuttoned his shirt and lifted his shank-proof vest, informing Lieutenant Galloway, "Look, Lieutenant, you can shake me down. Here's my shirt and my vest. I've got nothing." Lieutenant Galloway found the appellant's behavior odd as she was not allowed to search male officers. Most other officers who, like the appellant, did not work in the maximum security section of the prison did not wear a shank-proof vest.

Corporal Annette Haycraft, who also worked in the prison, was in the parking lot waiting for a ride when she saw the appellant enter the building to begin his shift. From her vantage point in the parking lot, Corporal Haycraft was able to see inside the prison. She saw the appellant come back through the checkpoint, which was unusual for correctional officers on their way to work. The appellant went into the men's restroom and left after twenty or twenty-five seconds.

Corporal Haycraft knew that a shakedown of Site 3 officers was being conducted that morning. Therefore, she found the appellant's behavior suspicious. She reported her suspicions to Corporal Shawn Morris, a fellow officer at the prison, and asked him to go into the men's restroom to investigate. Corporal Morris went into the men's restroom and noticed a ceiling tile out of place. He put his hand inside the ceiling tile and felt an object wrapped in newspaper. Corporals Haycraft and Morris then reported their suspicions to Lieutenant Galloway. Lieutenant Galloway went into the men's restroom and found a package wrapped in plastic wrap, newspaper, and tape. Inside the package, Lieutenant Galloway found 190.9 grams, over one-half ounce, of marijuana.

After the marijuana was found, the appellant spoke with Captain Russell Kiestler and Corporal Mike Ottinger with the Internal Affairs Division in the prison office. Captain Kiestler did

---

[1] According to Lieutenant Galloway, a shank is a sharp "metal-plated" knife made by inmates. Lieutenant Galloway explained that a shank-proof vest protects the wearer from being "stuck."

not believe the appellant was being truthful because he first denied that the package was his or that he had gone into the restroom on the morning of March 25 when he returned to the checkpoint. Then, the appellant changed his story and admitted that he had gone into the restroom but claimed he had gone to retrieve his chits which had been left there the previous day. Captain Kiestler said that the appellant's second version of events was implausible because the chits would not still be in the restroom if they had been left the previous day. The appellant did not tell Captain Kiestler that he had been receiving any threats. Captain Kiestler noted that the shank-proof vest could have a "hiding compartment." Additionally, Captain Kiestler said that there was a videotape of the appellant going into the restroom after returning to the checkpoint area.

The appellant later confessed to Special Agent Nathan Bishop with the Tennessee Bureau of Investigation (TBI) that he had brought the package into the prison, claiming that he was pressured by threats from inmates and people outside the prison. The appellant said that he had reported the threats and asked to be moved to another section. However, Special Agent Donna Turner with the TBI investigated the matter and found no evidence of the appellant's complaint or of threats against him.

The appellant testified at trial that the unit of the prison in which he worked was one of the worst in the prison, housing a "majority of the gangs." The appellant said that prior to the offenses he had received threatening notes from inmates telling him that he needed to "do the right thing." The appellant said that the notes were not signed; therefore, he was unsure which inmate had sent them. The appellant destroyed the notes and threw them away. The appellant also said that ugly messages directed at the appellant and his wife were written on the walls of his apartment. Additionally, a man approached the appellant when he was leaving a party store with his son. The man asked the appellant if he was Officer Smiles who worked in Unit 9. When the appellant responded affirmatively, the man warned, "Well, you go back down to Unit 9 something going to happen to you."

The appellant claimed that he reported all of the foregoing threats to members of the chain of command, including Unit Manager J.D. Cole, and requested to be moved from Unit 9. However, his request was denied. The appellant told his pastor, Samuel Peters, and his father, Joe Williams, about the threats and the denial of his request to be transferred. Peters and Williams saw the messages left on the walls of the appellant's apartment and testified at trial the appellant was "stressed" and upset because of the threats.

The appellant said that he received a letter advising him that he would receive a package that he needed to bring to Unit 9. Within a day or two, a package was left at the appellant's apartment. He did not look inside the package. He said he took the package to the prison because he was afraid. However, at the last moment he was too afraid to take the package into Unit 9 so he left the package in the bathroom near the checkpoint. The appellant's employment was terminated for his suspected involvement with the contraband.

Based upon the foregoing proof, the jury found the appellant guilty of introduction of contraband into a penal institution and possession of more than one-half ounce of marijuana with intent to deliver. The trial court imposed a three-year sentence for introduction of contraband into a penal institution and a one-year sentence for possession of marijuana with intent to deliver. The sentences were to be served concurrently. On appeal, the appellant questions whether "the trial court erred in denying appellant's motion to dismiss the indictment for failure to include the essential and necessary statutory mens rea element of 'unlawful intent' on the face of the indictment charging introduction of contraband into a penal institution." He also challenges the sufficiency of the evidence supporting his convictions.

## II. Analysis

### A. Dismissal of Indictment

First, we will address the appellant's claim that the indictment against him was defective because it failed to specifically state that he committed the crime "with unlawful intent." The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 9 of the Tennessee Constitution afford an accused the right to be informed of the nature and cause of the accusation against him or her. See State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). A valid indictment "must provide a defendant with notice of the offense charged, provide the court with an adequate ground upon which a proper judgment may be entered, and provide the defendant with protection against double jeopardy." State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991). We note that with the decline of common law offenses and the advent of statutory offenses, strict pleading requirements are no longer necessary. Hill, 954 S.W.2d at727-28. Instead, Tennessee courts now view "'attacks upon indictments, especially of this kind, from the broad and enlightened standpoint of common sense and right reason rather than from the narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding.'" Id. at 728 (quoting United States v. Purvis, 580 F.2d 853, 857 (5th Cir. 1978)). In other words, "Hill and its progeny leave little doubt that indictments which achieve the overriding purpose of notice to the accused will be considered sufficient to satisfy both constitutional and statutory requirements." State v. Hammonds, 30 S.W.3d 294, 300 (Tenn. 2000).

Tennessee Code Annotated section 39-16-201(a) (2003) provides that it is illegal for a person to

> (1) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title.

The indictment charging the appellant with introduction of contraband into a penal institution stated that the appellant

-4-

on or about March 25, 2005, . . . did unlawfully, feloniously and knowingly take marijuana, a Schedule II controlled substance, . . . while present in the West Tennessee State Penitentiary, a penal institution where prisoners are quartered or under custodial supervision, in violation of T.C.A. 39-16-201, against the peace and dignity of the State of Tennessee.

The indictment contained the date of the offense, outlined the nature of the crime, and cited the statute setting forth the alleged offense. We conclude that the indictment provided sufficient information to put the appellant on notice of the charged offense. The indictment was not defective and the trial court did not err in refusing to dismiss the indictment.

## B. Sufficiency of the Evidence

Next, the appellant contends that the evidence is not sufficient to support his convictions for introducing contraband into a penal institution and possession of more than one-half ounce of marijuana with the intent to sell or deliver. On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

As we stated earlier, in order to sustain the appellant's conviction for introducing contraband into a penal institution, the State needed to prove that the appellant, knowingly and with unlawful intent, did take, send, or otherwise cause contraband, such as a controlled substance, to be taken into a penal institution where prisoners are quartered or are under custodial supervision. See Tenn. Code Ann. § 39-16-201(a)(1) (2003). Further, to support the appellant's second conviction, the State needed to prove that the appellant knowingly possessed a controlled substance, namely over one-half ounce of marijuana, with the intent to deliver that controlled substance. Tenn. Code Ann. § 39-17-417(a)(4) and (g)(1) (2003). The appellant specifically argues that "the proof did not clearly establish unlawful intent in bringing in the package, but rather that he was acting under pressure of threats." Additionally, the appellant "contends that the State did not establish his knowledge of the contents of the package in a manner sufficient to sustain the conviction" for possession of marijuana with the intent to deliver.

The proof at trial revealed that the appellant took a package containing over one-half ounce of marijuana into the West Tennessee State Penitentiary, clearly a penal institution where prisoners are quartered or are under custodial supervision.  When the appellant realized that he would be searched and the marijuana would be found, he lied to Lieutenant Galloway and returned to the checkpoint to avoid the search.  The appellant went into a restroom past the checkpoint and hid the marijuana in a ceiling tile.  When the marijuana was found, the appellant repeatedly denied that he had gone into the restroom or that he had brought the marijuana into the prison.  However, the appellant ultimately admitted that he brought the marijuana into the prison but claimed he did so because of threats to him and his family.  He admitted that he knew that bringing marijuana into the prison was wrong.  The State's proof revealed that there was no evidence to support the appellant's claim that he was receiving threats or that he had requested help from his superiors because of threats.  Essentially, the case hinged on the issue of credibility, which the jury decided by finding the appellant guilty of both offenses.  We conclude that the evidence is sufficient to support the jury's verdicts.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE